**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ROBERT BARNES,<br>Plaintiff,<br>vs.<br>ANGIODYNAMICS, INC., & NAVILYST MEDICAL, INC.,<br>Defendants. | Case No.:<br>**COMPLAINT FOR DAMAGES**<br>**DEMAND FOR JURY TRIAL** |

COMES NOW the Plaintiff, ROBERT BARNES, (who hereinafter shall be referred to as the "Plaintiff" or as "BARNES"), by and through his undersigned counsel, and brings this Complaint against AngioDynamics, Inc., and Navilyst Medical, Inc., (collectively, the "Defendants"), and alleges as follows:

1. This is an action for damages arising out of failures relating to Defendants' design, development, testing, assembling, manufacturing, packaging, promoting, marketing, distribution, supplying, and/or selling the defective implantable vascular access device sold under the trade name of SmartPort (hereinafter "SmartPort" or "Defective Device").

**PARTIES**

2. Plaintiff, ROBERT BARNES, is an adult resident of Cook County, Illinois, and claims damages as set forth below. Plaintiff Robert Barnes is a resident of and domiciled in the city of Chicago, Cook County, Illinois. Plaintiff Robert Barnes therefore is a citizen of the State of Illinois.

3. Defendant AngioDynamics, Inc. ("AngioDynamics") is a Delaware corporation with its principal place of business located in Latham, New York. AngioDynamics is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its medical devices, including the SmartPort.

4. Defendant Navilyst Medical, Inc. ("Navilyst") is a Delaware corporation with its principal place of business located in Marlborough, Massachusetts. Navilyst conducts business throughout the United States, including the State of Illinois, and is a wholly owned subsidiary of AngioDynamics. Navilyst is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its medical devices, including the SmartPort.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. §1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and cost.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391 by virtue of the facts that (a) a substantial part of the events or omissions giving rise to the claims occurred in this District and (b) Defendants' products are produced, sold to, and consumed by individuals in the State of Illinois, thereby subjecting Defendants to personal jurisdiction in this action and making them all "residents" of this judicial District.

7. Defendants have and continue to conduct substantial business in the State of Illinois and in this District, distribute vascular access products in this District, receive substantial

compensation and profits from sales of vascular access products in this District, and made material omissions and misrepresentations and breaches of warranties in this District, so as to subject them to *in personam* jurisdiction in this District.

8. Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over Defendants because Defendants are present in the State of Illinois, such that requiring an appearance does not offend traditional notices of fair and substantial justice.

## PRODUCT BACKGROUND

9. In or about 2007, a company called Rita Medical Systems, Inc. received clearance via the 510(k) Premarket Notification Program from the Food and Drug Administration (FDA) to market and sell a product called Vortex® CT Port Access System.

10. Around the same time, Angiodynamics completed the acquisition of the assets and liabilities of Rita Medical Systems, Inc. and rebranded the subject product as SmartPort CT.

11. Defendants' Vascular Access Devices were designed, patented, manufactured, labeled, marketed, sold, and distributed by the Defendants at all relevant times herein.

12. The SmartPort is one of several varieties of port/catheter systems that has been designed, manufactured, marketed, and sold by Defendants.

13. According to Defendants, the SmartPort is a totally implantable vascular access device designed to provide repeated access to the vascular system for the delivery of medication, intravenous fluids, parenteral nutrition solutions, and blood products.

14. The intended purpose of the SmartPort is to make it easier to deliver medications directly into the patient's bloodstream. The device is surgically placed completely under the skin and left implanted.

15. The SmartPort is a system consisting of two primary components: an injection port and a polyurethane catheter which includes additives intended to make it radiopaque.

16. The injection port has a raised center, or "septum," where the needle is inserted for delivery of the medication. The medication is carried from the port into the bloodstream through a small, flexible tube, called a catheter, that is inserted into a blood vessel.

17. The SmartPort is indicated for patient therapies requiring repeated access to the vascular system. The port system can be used for infusion of medications, I.V. fluids, parenteral nutrition solutions, blood products, and for the withdrawal of blood samples.

18. The product's catheter is marketed under the trade name Fluoromax and is comprised of a polymeric mixture of polyurethane, a barium sulfate radiopacity agent. The Fluoromax catheter was first trademarked by Horizon Medical Products in 2005 and features a blue stripe which contains an even higher concentration of barium sulfate than the remainder of the lumen of the catheter.

19. Neither Horizon Medical Products nor AngioDynamics received clearance from the FDA to market the Fluoromax catheter, making such device *per se* misbranded pursuant to the Food, Drug and Cosmetic Act.

20. Barium sulfate is known to contribute to reduction of the mechanical integrity of polyurethane *in vivo* as the particles of barium sulfate dissociate from the surface of the catheter over time, leaving microfractures and other alterations of the polymeric structure and degrading the mechanical properties of the polyurethane.

21. Researchers have shown that catheter surface degradation in products featuring a radiopaque barium sulfate stripe is concentrated at the locus of the stripe.[1]

22. The mechanical integrity of a barium sulfate-impregnated polyurethane is affected by the concentration of barium sulfate as well as the heterogeneity of the modified polymer.

23. Upon information and belief, Defendants' manufacturing process in designing and constructing the catheter implanted in Plaintiff involved too high a concentration of barium sulfate particles for the polymer formulation, leading to improperly high viscosity of the admixed polyurethane before polymerization and causing improper mixing of barium sulfate particles within the polymer matrix.

24. This defect in the manufacturing process led to a heterogeneous modified polymer which included weakened areas at the loci of higher barium sulfate concentration and led to fracture of the catheter.

25. Although the surface degradation and resultant mechanical failure can be reduced or avoided with design modifications (*e.g.*, using a higher grade radiopacity compound and/or encapsulating the admixed polymer within polyurethane), Defendants elected not to incorporate those design elements into the SmartPort.

26. At all times relevant, Defendants misrepresented the safety of the SmartPort system, and negligently designed, manufactured, prepared, compounded, assembled, processed, labeled, marketed, distributed, and sold the SmartPort system as safe and effective device to be surgically implanted to provide repeated access to the vascular system for the delivery of medications, intravenous fluids, parenteral nutrition solutions, and blood products.

---

[1] See Hecker JF, Scandrett LA. Roughness and thrombogenicity of the outer surfaces of intravascular catheters. *J Biomed Mater Res*. 1985;19(4):381-395. doi:10.1002/jbm.820190404

27. At all times relevant to this action, Defendants knew and had reason to know, that the SmartPort was not safe for the patients for whom they were prescribed and implanted, because once implanted the device was prone to fracturing, migrating, perforating internal vasculature, and otherwise malfunctioning.

28. At all times relevant to this action, Defendants knew and had reason to know that patients implanted with a SmartPort port had an increased risk of suffering life threatening injuries, including but not limited to: death; hemorrhage; cardiac/pericardial tamponade (pressure caused by a collection of blood in the area around the heart); cardiac arrhythmia and other symptoms similar to myocardial infarction; severe and persistent pain; and perforations of tissue, vessels and organs, or the need for additional surgeries to remove the defective device.

29. Soon after the SmartPort was introduced to market, which was years before Plaintiff was implanted with his device, Defendants began receiving large numbers of adverse event reports ("AERs") from health care providers reporting that the SmartPort was fracturing post-implantation and that fractured pieces were migrating throughout the human body, including to the heart and lungs. Defendants also received large numbers of AERs reporting that SmartPort was found to have perforated internal vasculature. These failures were often associated with reports of severe patient injuries such as:

a. hemorrhage.

b. cardiac/pericardial tamponade;

c. cardiac arrhythmia and other symptoms similar to myocardial infarction;

d. severe and persistent pain;

e. and perforations of tissue, vessels and organs; and

f. upon information and belief, even death.

30. In addition to the large number of AERs which were known to Defendants and reflected in publicly accessible databases, there are many recorded device failures and/or injuries related to the Defendants' implantable port products which were concealed from medical professionals and patients through submission to the FDA's controversial Alternative Summary Reporting ("ASR") program.

31. The FDA halted the ASR program after its existence was exposed by a multi-part investigative piece, prompting a widespread outcry from medical professionals and patient advocacy groups.[2]

32. Prior to the discontinuation of the ASR program, Defendants reported numerous episodes of failures of their implanted port/catheter products – including numerous episodes of catheter fracture – under the ASR exemption, thereby concealing them from physicians and patients.

33. Defendants were aware or should have been aware that the SmartPort had a substantially higher failure rate than other similar products on the market, yet Defendants failed to warn consumers of this fact.

34. Defendants also intentionally concealed the severity of complications caused by the SmartPort and the likelihood of these events occurring.

35. Rather than alter the design of the SmartPort to make it safer or adequately warn physicians of the dangers associated with the SmartPort, Defendants continued to actively and aggressively market the SmartPort as safe, despite their knowledge of numerous reports of catheter fracture and associated injuries.

---

[2] Christina Jewett, *Hidden Harm: Hidden FDA Reports Detail Harm Caused by Scores of Medical Devices*, Kaiser Health News (Mar. 2019)

36. Moreover, Defendants' warnings suggested that fracture of the device could only occur if the physician incorrectly placed the device such that undue catheter compression or "pinch-off" was allowed to occur. In reality, Defendants knew internally these devices were fracturing and causing serious injuries due to defects in the design, manufacturing and lack of adequate warnings.

37. The conduct of Defendants, as alleged in this Complaint, constitutes willful, wanton, gross, and outrageous corporate conduct that demonstrates a conscious disregard for the safety of Plaintiff and evidences malice, fraud, gross negligence, and oppressiveness. Defendants had actual knowledge of the dangers presented by the SmartPort System, yet consciously failed to act reasonably to:

a. Adequately inform or warn Plaintiff, his prescribing physicians, or the public at large of these dangers;

b. Establish and maintain an adequate quality and post-market surveillance system; or

c. Recall the SmartPort System from the market.

## SPECIFIC FACTUAL ALLEGATIONS AS TO ROBERT BARNES

38. On or about April 19, 2017, Plaintiff underwent placement of the AngioDynamics VortexLP, catalog number LVTX7013, lot number 4913619. The device was implanted by Dr. Jeffrey S. Fonza, at Northwestern Memorial Hospital in Chicago, Illinois, for the purpose of chemotherapy treatment.

39. Defendant, directly or through their agents, apparent agents, servants, or employees designed, manufactured, marketed, advertised, distributed and sold the SmartPort that was implanted in Plaintiff.

40. Defendant manufactured, sold, and/or distributed the SmartPort to Plaintiff, through his doctors, to be used for delivery of chemotherapy.

41. On or about February 1, 2022, the SmartPort fractured, causing severe injury to Plaintiff.

42. On or about March 24, 2022, Plaintiff underwent surgery with Northwestern Memorial Hospital in Chicago, Illinois, to remove the SmartPort and a portion of the fractured catheter from the right atrium and ventricle.

43. On or about August 4, 2022, Plaintiff underwent surgery with Northwestern Memorial Hospital in Chicago, Illinois to remove the remaining portion of the fractured catheter from the right atrium and ventricle.

44. At all times, the SmartPort was utilized and implanted in a manner foreseeable to Defendant, as Defendant generated the instructions for use and created procedures for implanting the product.

45. The SmartPort implanted into the Plaintiff was in the same or substantially similar condition as when it left the possession of Defendants and in the condition directed by and expected by Defendants.

46. Plaintiff and his physicians foreseeably used and implanted the Smartport and did not misuse or alter the SmartPort in an unforeseeable manner.

47. Defendants advertised, promoted, marketed, sold, and distributed the SmartPort as a safe medical device when Defendants knew or should have known the SmartPort was not safe for its intended purposes and that the product could cause serious medical problems.

48. Defendants had sole access to material facts concerning the defective nature of the products and their propensity to cause serious and dangerous side effects.

49. In reliance on Defendants' representations, Plaintiff's doctor was induced to and did use the SmartPort.

50. As a result of having the SmartPort implanted, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, permanent and substantial physical deformity, has undergone and will undergo corrective surgery or surgeries, and has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and present and future lost wages.

51. Defendants' SmartPort was marketed to the medical community and to patients as a safe, effective, reliable, medical devices implanted by safe and effective, minimally invasive surgical techniques for the treatment of medical conditions, and as safer and more effective as compared to the traditional products and procedures for treatment and other competing Vascular Access Devices.

52. The Defendants have marketed and sold the Defendants' SmartPort to the medical community at large and patients through carefully planned, multifaceted marketing campaigns and strategies. These campaigns and strategies include, but are not limited to, direct to consumer advertising, aggressive marketing to healthcare providers at medical conferences, hospitals, private offices, and/or group purchasing organizations, and include a provision of valuable consideration and benefits to the aforementioned.

53. The injuries, conditions, and complications suffered due to Defendants' SmartPort include but are not limited to hemorrhage; cardiac/pericardial tamponade; cardiac arrhythmia and other symptoms similar to myocardial infarction; severe and persistent pain; perforations of tissue, vessels and organs; and even death.

54. Defendants were negligent toward Plaintiff in the following respects:

a) Defendants failed to design and establish a safe, effective procedure for removal of SmartPort; therefore, in the event of a failure, injury, or complications it is difficult to safely remove SmartPort.

b) Defendants provided incomplete, insufficient, and misleading information to physicians in order to increase the number of physicians using SmartPort for the purpose of increasing their sales. By so doing, Defendants caused the dissemination of inadequate and misleading information to patients, including the Plaintiff.

55. The SmartPort was utilized and implanted in a manner foreseeable to Defendants.

56. The SmartPort implanted into Plaintiff was in the same or substantially similar condition as when it left the possession of the Defendants and in the condition directed by the Defendants.

57. At the time of his operation, Plaintiff was not informed of, and had no knowledge of the complaints, known complications, and risks associated with SmartPort.

58. Plaintiff was never informed by Defendants of the defective and dangerous nature of SmartPort.

59. At the time of his implant, neither Plaintiff nor Plaintiff's physicians were aware of the defective and dangerous condition of SmartPort.

60. At the time of the injuries referenced herein, Plaintiff did not know that the surgery he underwent was due to a defect in these products.

61. Plaintiff has suffered and will continue to suffer physical pain and mental anguish.

62. Plaintiff has also incurred substantial medical bills and has suffered loss of other monies due to the defective product that was implanted in his body.

63. As set forth more thoroughly throughout this Complaint, Defendants sold, leased, or otherwise put into commerce the SmartPort in a defective condition unreasonably dangerous to

Plaintiff and therefore is subject to liability for the harm caused by the product to Plaintiff because Plaintiff is in the class of persons that Defendants should have reasonably foreseen as being subject to the harm caused by the defective condition, Defendants are in the business of selling the SmartPort, and the SmartPort was expected to and in fact did reach Plaintiff without substantial alteration in the condition in which the SmartPort is sold.

64. As set forth more thoroughly throughout this Complaint, at the time the SmartPort was conveyed by Defendants to Plaintiff and his health care providers, the SmartPort was in a condition not contemplated by reasonable persons among those considered expected users or consumers of the SmartPort, including Plaintiff and his health care providers, and unreasonably dangerous to expected users or consumers, including Plaintiff and his health care providers, when used in reasonably expectable ways of handling or consumption.

65. As set forth more thoroughly throughout this Complaint, Defendants failed to exercise reasonable care under the circumstances in providing warnings or instructions related to the SmartPort.

66. As set forth more thoroughly throughout this Complaint, Defendants failed to properly label the SmartPort to give reasonable warnings of the product's dangers and/or failed to give reasonably complete instructions on proper use of the SmartPort when Defendants, by exercising reasonable diligence, could have made such warnings or instructions available to Plaintiff and/or his health care providers.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

(Against Defendants AngioDynamics and Navilyst)

67. Plaintiff repeats and incorporates by reference all other paragraphs of this

Complaint as if fully set forth herein.

68. The Defendants owed Plaintiff a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, selling, and conducting post-market surveillance of the SmartPort.

69. The Defendants failed to exercise due care under the circumstances and therefore breached this duty by:

a. Failing to properly and thoroughly test the SmartPort before releasing the device to market, and/or failing to implement feasible safety improvements;

b. Failing to properly and thoroughly analyze the data resulting from any pre-market testing of the SmartPort;

c. Failing to conduct sufficient post-market testing and surveillance of the SmartPort;

d. Designing, manufacturing, marketing, advertising, distributing, and selling the SmartPort to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of the SmartPort and without proper instructions to avoid the harm which could foreseeably occur as a result of using the device;

e. Failing to exercise due care when advertising and promoting the SmartPort; and

f. Negligently continuing to manufacture, market, advertise, and distribute the SmartPort after Defendants knew or should have known of its adverse effects.

70. As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

71. In performing the foregoing acts, omissions, and misrepresentations, Defendants acted grossly negligent, fraudulently, and with malice so as to justify an award of punitive and/or exemplary damages.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## SECOND CAUSE OF ACTION

## NEGLIGENCE- FAILURE TO WARN

(Against Defendants AngioDynamics and Navilyst)

72. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

73. Defendants owed Plaintiff and Plaintiff's healthcare providers a duty to disclose whether the SmartPort had been adequately tested and of the substantial danger and/or potential risks associated with the SmartPort when used or misused in a reasonably foreseeable manner.

74. Defendants knew or reasonably should have known that the SmartPort was not adequately tested and was dangerous or was likely to be dangerous when used or misused in a reasonably foreseeable manner.

75. Defendants knew or reasonably should have known that the users of the SmartPort would not realize and reasonably could not realize that the SmartPort was not adequately tested or the substantial danger or potential risks associated with the SmartPort when used or misused in a reasonably foreseeable manner.

76. Defendants failed to adequately warn Plaintiff and Plaintiff's prescribing physician that the SmartPort was not adequately tested or of the substantial danger and/or potential risks

associated with the SmartPort when used or misused in a reasonably foreseeable manner.

77. A reasonable manufacturer, distributor, seller under the same or similar circumstances would have warned that the SmartPort was not adequately tested and/or of the substantial danger and/or potential risks associated with the SmartPort.

78. Plaintiff would not have consented to be implanted with the SmartPort if Defendants had provided an adequate warning that the SmartPort was not adequately tested or of the substantial danger and/or potential risks associated with the SmartPort.

79. Upon information and belief, Plaintiff's prescribing physician would not have implanted the SmartPort into Plaintiff if Defendants had provided an adequate warning that the SmartPort was not adequately tested or of the substantial danger and/or potential risks associated with the SmartPort.

80. As a direct and proximate result of Defendants' failure to warn, Plaintiff has suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic loss and damages including, but not limited to medical expenses, lost income, and other damages. These damages have occurred in the past and will continue into the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**THIRD CAUSE OF ACTION**

**NEGLIGENCE- DESIGN DEFECT**

(Against Defendants AngioDynamics and Navilyst)

81. Plaintiff repeats and incorporates by reference all other paragraphs of this

Complaint as if fully set forth herein.

82. Defendants owed Plaintiff a duty to exercise reasonable care when designing, manufacturing, labeling, marketing, advertising, distributing, selling, and conducting post-market surveillance of the SmartPort.

83. Defendants breached their duty of care and were negligent in the designing, manufacturing, and/or supplying of the SmartPort.

84. At the time the SmartPort left Defendants' control, safer alternative designs—that would have prevented or reduced the substantial danger and/or potential risks associated with the SmartPort—were commercially, technologically, and scientifically attainable and feasible.

85. As a direct and proximate result of Defendants' negligent design, Plaintiff has suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic loss and damages including, but not limited to medical expenses, lost income, and other damages. These damages have occurred in the past and will continue into the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE- MANUFACTURING DEFECT

(Against Defendants AngioDynamics and Navilyst)

86. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

87. Defendants operated under design and manufacturing specifications for the

SmartPort, which included appropriate material content, strength, size, durability appearance, resistance levels, and that the devices did not deviate from its intended design. The manufacturing process was intended to identify any end-product products that did not meet Defendants' specifications.

88. Defendants owed Plaintiff a duty to exercise reasonable care when manufacturing, setting design and manufacturing specifications, exercising quality control over, distributing, and selling the SmartPort.

89. Defendants breached this duty and failed to exercise reasonable care when manufacturing, setting design and manufacturing specifications, exercising quality control over, distributing, and selling the SmartPort that was implanted into Plaintiff. This caused the SmartPort that was implanted into Plaintiff to deviate from its intended design and/or vary from its intended specifications in that the device did not have the specified material content, size, durability, and strength.

90. The defective and dangerous condition of the SmartPort implanted into Plaintiff existed at the time it left Defendants' possession. The device differed from Defendants' intended result and/or from other ostensibly identical units of the same product line.

91. As a direct and proximate result of Defendants' negligent manufacturing, Plaintiff has suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic loss and damages including, but not limited to medical expenses, lost income, and other damages. These damages have occurred in the past and will continue into the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief

as the Court deems proper.

**FIFTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

(Against Defendants AngioDynamics and Navilyst)

92. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

93. Defendants owed Plaintiff and Plaintiff's healthcare providers a duty to disclose material facts including, but not limited to whether the SmartPort had been adequately tested and the substantial danger and/or potential risks associated with the SmartPort when used or misused in a reasonably foreseeable manner.

94. Defendants breached their duty in representing and continue to represent to the medical and healthcare community, Plaintiff, and the public that the SmartPort was tested and found to be safe and effective.

95. Defendants knew or reasonably should have known that the SmartPort was not adequately tested and/or dangerous or was likely to be dangerous when used or misused in a reasonably foreseeable manner.

96. Defendants' misrepresentations of material facts regarding the SmartPort's safety and efficacy were made to induce Plaintiff, Plaintiff's healthcare provider, and the public into recommending, prescribing, dispensing, and purchasing the SmartPort.

97. A reasonable ordinary consumer would have acted or relied upon Defendants' misrepresentations of material facts regarding the SmartPort's safety and efficacy.

98. Plaintiff justifiably acted or relied upon Defendants' misrepresentations of material facts to his detriment and was induced to, and did use, the SmartPort which caused severe and

permanent personal injuries and damages.

99. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic loss and damages including, but not limited to medical expenses, lost income, and other damages. These damages have occurred in the past and will continue into the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**SIXTH CAUSE OF ACTION**

**GROSS NEGLIGENCE**

(Against Defendants AngioDynamics and Navilyst)

100. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

101. Plaintiff is entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and welfare. Defendants intentionally and fraudulently misrepresented facts and information to both the healthcare community and the general public, including Plaintiff and Plaintiff's healthcare providers, by making intentionally false and fraudulent misrepresentations about the safety and efficacy of the SmartPort. Defendants intentionally concealed the material facts and information regarding the serious risks of harm associated with the implantation of said product, and intentionally downplayed the type, nature, and extent of the adverse side effects of being implanted with the device, despite Defendants' knowledge and awareness of the serious and permanent side effects

and risks associated with use of same. Defendants further intentionally sought to mislead healthcare providers and patients, including Plaintiff and Plaintiff's healthcare providers, regarding the cause of catheter-related infection.

102. Defendants had knowledge of, and were in possession of, evidence demonstrating that the SmartPort caused serious side effects. Defendants continued to market said product by providing false and misleading information with regard to the product's safety and efficacy to the regulatory agencies, the medical community, and consumers of the device, notwithstanding Defendants' knowledge of the true serious side effects of the SmartPort, Defendants failed to provide accurate information and warnings to the healthcare community that would have dissuaded physicians from surgically implanting the SmartPort and consumers from agreeing to being implanted with the SmartPort, thus depriving physicians and consumers from weighing the true risks against the benefits of prescribing and implanting the SmartPort.

103. Plaintiff therefore will seek to assert claims for exemplary damages at the appropriate time under governing law in an amount within the jurisdictional limits of the Court.

104. Plaintiff also alleges that the acts and omissions of named Defendants, whether taken singularly or in combination with others, constitute gross negligence that proximately caused the injuries to Plaintiff. In that regard, Plaintiff will seek exemplary damages in an amount that would punish Defendants for their conduct and which would deter other manufacturers from engaging in such misconduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**SEVENTH CAUSE OF ACTION**

**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**

(Against Defendants AngioDynamics and Navilyst)

105. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

106. Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the SmartPort, including the one implanted into Plaintiff, into the stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers, and therefore had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device.

107. At the time Defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the device into the stream of commerce, the device was defective and presented a substantial danger to users of the product when put to its intended and reasonably anticipated use, namely as an implanted port/catheter system to administer the medications. Defendants failed to adequately warn of the device's known or reasonably scientifically knowable dangerous propensities and further failed to adequately provide instructions on the safe and proper use of the device.

108. Defendants knew or should have known at the time they manufactured, labeled, distributed and sold the SmartPort that was implanted into Plaintiff that the SmartPort posed a significant and higher risk than other similar devices of device failure and resulting serious injuries.

109. Defendants further knew that these devices were fracturing and migrating for reasons other than "pinch-off" caused by the physician's initial placement of the device

110. Defendants failed to timely and reasonably warn of material facts regarding the

safety and efficacy of the SmartPort; no reasonable health care provider, including Plaintiff's, or patient would have used the device in the manner directed, had those facts been made known to the prescribing healthcare providers or the consumers of the device.

111. The warnings, labels, and instructions provided by the Defendants at all time relevant to this action, are and were inaccurate, intentionally misleading, and misinformed and misrepresented the risks and benefits and lack of safety and efficacy associated with the device.

112. The health risks associated with the device as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

113. The device, which was designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold into the stream of commerce by Defendants, was defective at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

114. When Plaintiff was implanted with the device, Defendants AngioDynamics, Inc. and Navilyst Medical, Inc failed to provide adequate warnings, instructions, or labels regarding the severity and extent of health risks posed by the device, as discussed herein.

115. Defendants intentionally underreported the number and nature of adverse events associated with dislodgement and migration of the devices to Plaintiff's health care providers, as well as the FDA.

116. Neither Plaintiff nor his health care providers knew of the substantial danger associated with the intended and foreseeable use of the device as described herein.

117. Plaintiff and his health care providers used SmartPort in a normal, customary, intended, and foreseeable manner, namely as a surgically placed device used to make it easier to deliver medications directly into the patient's bloodstream. Moreover, Plaintiff's health care

providers did not place or maintain the device incorrectly such that it caused the device to "pinch off" or otherwise malfunction.

118. Upon information and belief, the defective and dangerous condition of the device, including the one implanted into Plaintiff, existed at the time they were manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold by Defendants to distributors and/or healthcare professionals or organizations. Upon information and belief, the device implanted in Plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants.

119. Defendants' lack of sufficient warning and/or instructions was the direct and proximate cause of Plaintiff's serious physical injuries, and economic damages in an amount to be determined at trial. In other words, had Defendants provided adequate warnings, Plaintiff and his physicians would not have used the device.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## EIGHTH CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

(Against Defendants AngioDynamics and Navilyst)

120. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

121. Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the SmartPort that was implanted into Plaintiff.

122. The SmartPort implanted in Plaintiff contained a manufacturing defect when it left

Defendants' possession. The device differed from said Defendants' intended result and/or from other ostensibly identical unites of the same product line.

123. Upon information and belief, the SmartPort implanted in Plaintiff varied from its intended specifications.

124. Plaintiff and his health care providers used the SmartPort in a way that was reasonably foreseeable to Defendants.

125. The device's manufacturing defect was the direct and proximate cause of Plaintiff's serious physical injuries and economic damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**NINTH CAUSE OF ACTION**

**STRICT PRODUCTS LIABILITY – DESIGN DEFECT**

(Against Defendants AngioDynamics and Navilyst)

126. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

127. The SmartPort implanted in the Plaintiff was not reasonably safe for its intended use and was defective with respect to its design.

128. The SmartPort was in a defective condition at the time that it left the possession or control of Defendants.

129. The SmartPort was unreasonably dangerous to the user or consumer.

130. The SmartPort was expected to and did reach the consumer without substantial change in its condition.

131. Defendants are strictly liable to the Plaintiff for designing, manufacturing,

marketing, labeling, packaging and selling a defective product.

132. As a direct and proximate result of the SmartPort's aforementioned defects, the Plaintiff was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**TENTH CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTY**

(Against Defendants AngioDynamics and Navilyst)

133. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

134. Defendants impliedly warranted that the SmartPort was merchantable and fit for the ordinary purposes for which it was intended.

135. When the SmartPort was implanted in the Plaintiff, it was being used for the ordinary purposes for which it was intended.

136. The Plaintiff, individually and/or by and through his physician, relied upon Defendants' implied warranties of merchantability in consenting to have the SmartPort implanted in him.

137. Defendants breached these implied warranties of merchantability because the SmartPort implanted in the Plaintiff was neither merchantable nor suited for its intended uses as warranted.

138. Defendants' breaches of their implied warranties resulted in the implantation of

unreasonably dangerous and defective SmartPort in the Plaintiff's body, placing said Plaintiff's health and safety in jeopardy.

139. The SmartPort was sold to the Plaintiff's health care providers for implantation in patients, such as the Plaintiff.

140. As a direct and proximate result of Defendants' breaches of the aforementioned implied warranties, the Plaintiff was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## ELEVENTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

(Against Defendants AngioDynamics and Navilyst)

141. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

142. Defendants through their officers, directors, agents, representatives, and written literature and packaging, and written and media advertisement, expressly warranted that the SmartPort was safe and fit for use by consumers, was of merchantable quality, did not produce dangerous side effects, and was adequately tested and fit for its intended use.

143. The SmartPort does not conform to the Defendants' express representations because it is not reasonably safe, has numerous serious side effects, and causes severe and permanent injury.

144. At all relevant times, the SmartPort did not perform as safely as an ordinary

consumer would expect, when used as intended or in a reasonably foreseeable manner.

145. Plaintiff, his physicians, and the medical community reasonably relied upon the Defendants' express warranties for the SmartPort.

146. At all relevant times, the SmartPort was used on Plaintiff by Plaintiff's physicians for the purpose and in the manner intended by Defendants.

147. Plaintiff and Plaintiff's physicians, by the use of reasonable care, could not have discovered the breached warranty and realized its danger.

148. As a direct and proximate result of the breach of Defendants' express warranties, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## TWELFTH CAUSE OF ACTION

## FRAUDULENT CONCEALMENT

(Against Defendants AngioDynamics and Navilyst)

149. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein. as if fully set forth herein.

150. Defendants fraudulently concealed information with respect to the SmartPort in the following particulars:

a. Defendants represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that

the SmartPort was safe and fraudulently withheld and concealed information about the substantial risks of using the SmartPort;

b. Defendants represented that the SmartPort was safer than other alternative systems and fraudulently concealed information which demonstrated that the SmartPort was not safer than alternatives available on the market;

c. Defendants concealed that it knew these devices were fracturing and migrating from causes other than the manner in which the implanting physician implanted the device; and

d. That frequency of these failures and the severity of injuries were substantially worse than had been reported.

151. The Defendants had sole access to material facts concerning the dangers and unreasonable risks of the SmartPort.

152. The concealment of information by the Defendants about the risks of the SmartPort was intentional, and the representations made by Defendants were known by Defendants to be false.

153. The concealment of information and the misrepresentations about the SmartPort was made by the Defendants with the intent that Plaintiff's health care providers and Plaintiff rely upon them.

154. Plaintiff and his physicians relied upon the representations and were unaware of the substantial risks of the SmartPort which the Defendants concealed from the public, including Plaintiff and his physicians.

155. As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and

injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

156. The Defendants acted with oppression, fraud, and malice towards Plaintiff, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing Defendants for their conduct, in an amount sufficiently large to be an example to others, and to deter this Defendants and others from engaging in similar conduct in the future.

157. Had Defendants not concealed this information, neither Plaintiff's nor his health care providers would have consented to using the device in Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## THIRTEENTH CAUSE OF ACTION

## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

(Against Defendants AngioDynamics and Navilyst)

158. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein. as if fully set forth herein.

159. Plaintiff is a "consumer" pursuant to 815 Ill. Comp. Stat. Ann Sec. 505/1, et seq.

160. At all times relevant to this Complaint, the conduct of Defendants constitutes the "sale" of "merchandise" pursuant to 815 Ill. Comp. Stat. Ann Sec. 505/1, et seq.

161. As described throughout this Complaint, Defendants engaged in deceptive acts or

practices and/or false advertising in the conduct of business, trade, and/or commerce related to the SmartPort.

162. Defendants' deceptive acts and practices were consumer-oriented.

163. Defendants represented and continue to represent to the medical and healthcare community, Plaintiff, and the public that the SmartPort was tested and found to be safe and effective. Defendants had sole access to material facts concerning the substantial danger and/or potential risks associated with the SmartPort.

164. Defendants' representations were, in fact, false. When Defendants made their representations, Defendants knew or reasonably should have known that the SmartPort was not adequately tested and/or dangerous or was likely to be dangerous when used or misused in a reasonably foreseeable manner.

165. Moreover, Defendants knew and/or had reason to know that thosewere false, and Defendants willfully, wantonly, and recklessly disregarded the inaccuracies in their representations and the dangers and health risks to users of the SmartPort.

166. In representations to Plaintiff and/or to Plaintiff's healthcare providers, Defendants fraudulently concealed and intentionally or recklessly omitted material information, including but not limited to the following:

a) The SmartPort was inherently dangerous and defective, unfit and unsafe for its intended and reasonably foreseeable use and did not meet or perform to the user's intended expectations;

b) Patients implanted with SmartPort had an increased risk of suffering life threatening injuries, including but not limited to: death; hemorrhage; thromboembolism; infection; cardiac arrhythmia; severe and persistent pain; and

perforations of tissue, vessels and organs, or the need for additional surgeries to remove the defective device;

c) The SmartPort posed a significant and higher risk than other similar devices of device failure and resulting serious injuries;

d) The inadequate research and testing of the SmartPort;

e) The true quantitative or qualitative risk and the true extent of infection associated with the SmartPort;

f) The risk of infection was higher in cases where the SmartPort stays in place for longer than a year;

g) g. The SmartPort should be closely monitored in cases where it is left in place for over a year;

h) The SmartPort raised the risk of infection by virtue of the catheter design and composition; and

i) The number and nature of adverse events related to the SmartPort.

167. The aforesaid acts and practices constitute unfair deceptive acts or practices and/or unlawful false advertising as prohibited by 815 Ill. Comp. Stat. Ann. 505/1, et seq., including, without limitation:

a) Representing that goods or services have sponsorships, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; and

b) Representing that goods or services are of a particular standard, quality, or grade, or that good are of a particular style or model if they are of another.

168. As the sellers and advertisers of the SmartPort, Defendants had a statutory duty to refrain from deceptive or unfair trade practices or acts in their sale and advertisement of the

SmartPort.

169. As a result of Defendants conduct prohibited by 815 Ill. Comp. Stat. Ann. 505/1, et seq., Plaintiff suffered the injuries described in this Complaint.

## PUNITIVE DAMAGES

170. Plaintiff is entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious, and/or grossly negligent acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and welfare. Defendants intentionally and fraudulently misrepresented facts and information to both the healthcare community and the general public, including Plaintiff and his health care providers, by making intentionally false and fraudulent misrepresentations about the safety and efficacy of the SmartPort. Defendants intentionally concealed the true facts and information regarding the serious risks of harm associated with the implantation of said product, and intentionally downplayed the type, nature, and extent of the adverse side effects of being implanted with the device, despite Defendants' knowledge and awareness of the serious and permanent side effects and risks associated with use of same. Defendants further intentionally sought to mislead health care providers and patients, including Plaintiff and his health care providers, regarding the cause of dislodgement and migration failures of the device.

171. Defendants had knowledge of, and were in possession of evidence demonstrating that, the SmartPort caused serious physical side effects. Defendants continued to market said product by providing false and misleading information with regard to the product's safety and efficacy to the regulatory agencies, the medical community, and consumers of the device, notwithstanding Defendants' knowledge of the true serious side effects of the SmartPort,

Defendants failed to provide accurate information and warnings to the healthcare community that would have dissuaded physicians from surgically implanting the SmartPort and consumers from agreeing to being implanted with the SmartPort, thus depriving physicians and consumers from weighing the true risks against the benefits of prescribing and implanting the SmartPort.

172. As a direct, proximate, and legal result of Defendants' acts and omissions a described herein, and Plaintiff's implantation with Defendants' defective product, Plaintiff suffered, and will continue to suffer, the injuries and damages described in this complaint.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## PRAYER

**WHEREFORE**, Plaintiff prays for judgment against each of the Defendants as follows:

a. Judgement be entered against all Defendants on all causes of action of this Complaint;

b. Plaintiff be awarded his full, fair, and complete recovery for all claims and causes of action relevant to this action;

c. Plaintiff be awarded general damages according to proof at the time of trial;

d. Plaintiff be awarded damages, including past, present, and future, medical expenses according to proof at the time of trial;

e. Plaintiff be awarded punitive damages according to proof at the time of trial;

f. Awarding pre-judgment and post-judgment interest to the Plaintiff;

g. Awarding the costs and the expenses of this litigation to the Plaintiff.

h. For such other and further relief as the court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues.

Dated: January 31, 2024

Respectfully submitted,

/S/ **BRETT A. EMISON**
Brett A. Emison, MO Bar # 52075
Langdon & Emison
911 Main Street-P.O. Box 220
Lexington, MO 64067
Telephone: (660) 259-6175
Fax: (660) 259-4571
brett@lelaw.com

*ATTORNEYS FOR PLAINTIFF ROBERT BARNES*

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2024, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/Brett A. Emison
Brett A. Emison
*Attorney for Plaintiff*